Tyler G. Doyle (State Bar No. 034303)
Baker & Hostetler LLP
811 Main Street, Suite 1100
Houston, TX 77002-6111
Telephone: 713.646.1374
tdoyle@bakerlaw.com

Attorney for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| SYSTEMATICA INVESTMENTS LP, a United Kingdom limited partnership; and LEDA MARIA BRAGA, an individual, | **Civil Action No.: _____** |
| Plaintiffs, | **COMPLAINT FOR:** |
| v. | 1. Federal Trademark Infringement, 15 U.S.C. §§ 1051 et seq. and 1125(a) |
| NAMECHEAP, INC., a Delaware corporation; CHIKA BROWN, an individual; and WITHHELD FOR PRIVACY EHF, an Icelandic einkahlutafélag, | 2. False Designation of Origin and False Endorsement, 15 U.S.C. § 1125(a) |
| | 3. Violation of Cyberpiracy Protection for Individuals Act, 15 U.S.C. § 8131 |
| Defendants. | 4. Violation of Anticybersquatting Protection Act, 15 U.S.C. 1125(d) |
| | 5. Violation of Right of Publicity |
| | 6. Contributory Trademark Infringement |

**COMPLAINT**

Plaintiffs Systematica Investments LP ("Systematica") and Leda Maria Braga ("Ms. Braga" or "Plaintiff Braga"), by and through their attorneys, file this complaint against Defendants Namecheap, Inc. ("Namecheap"), Chika Brown ("Brown"), and Withheld for Privacy ehf ("Withheld"), and allege as follows:

**JURISDICTION AND PARTIES**

1.      This is an action for, *inter alia*, violation of the common law right of publicity, trademark infringement and false endorsement under the Lanham Act, 15 U.S.C., § 1051, et seq.

and the Lanham Act, 15 U.S.C. § 1125(a), concerning the domain <ledamariabraga.com> (the "Fraudulent Domain") and the content hosted and displayed on the Fraudulent Domain ("the Fraudulent Website"), as hereinafter more fully described.

2.    In addition to the trademark infringement claims set out in this Complaint, this is an action both *in rem* under the Anticybersquatting Protection Act ("ACPA"), 15 U.S.C 1125(d), and *in personam* for injunctive relief and compensatory and punitive damages under ACPA and 15 U.S.C. § 8131 and the Cyberpiracy Protections for Individuals Act ("CPI").

3.    Plaintiff Systematica is a Guernsey limited partnership with its principal place of business at Elizabeth Avenue, Plaza House, Third Floor, St. Peter Port, Guernsey GY1 2HU.

4.    Plaintiff Braga is an individual and a citizen with dual nationality, of the United Kingdom and Brazil, with her principal place of residence in Jersey, Channel Islands.

5.    Upon information and belief, Defendant Namecheap is a Delaware corporation with its principal place of business at 4600 East Washington Street, Suite 300, Phoenix, AZ 85034.

6.    Upon information and belief, Defendant Withheld is an Icelandic einkahlutafélag with its principal place of business at Kalkofnsvegur 2, Reykjavik, Iceland.

7.    Upon information and belief, and according to a search of DISP's WHOIS database, Withheld is the entity protecting the identity of the registrant of the Fraudulent Domain, Defendant Brown.  The result of the foregoing search is set out in Exhibit A.

8.    Upon information and belief, Defendant Brown is a resident of Nigeria who has violated federal statutes and Arizona state common law and is subject to the jurisdiction of this Court.

9.    Defendant Brown was identified only through the filing of a Uniform Domain Name Resolution complaint submitted by Plaintiffs.

10.     This Court has original jurisdiction over this action pursuant to 15 U.S.C. §§ 1117, 1121, and 1125, and 28 U.S.C. §§ 1331 and 1338, in that this Complaint raises federal questions under the United States Trademark Act (Lanham Act), 15 U.S.C. § 1051 et seq.

11.     The Court has personal jurisdiction over Defendant Brown because they have purposefully engaged in using service marks that are confusingly similar to Plaintiff Systematica's service marks LEDAMARIABRAGA and LEDA BRAGA in the state of Arizona. Further, Defendant Brown's unauthorized registration of the Fraudulent Domain, and operation of the resulting Fraudulent Website, has violated Plaintiff Braga's right to publicity.

12.     The Court has personal jurisdiction over Defendant Namecheap because they are headquartered in Arizona, and list Phoenix, Arizona as their principal place of business.  They have contributed to and enabled Defendant Doe's registration of the Fraudulent Domain and infringement of Plaintiff Systematica's service marks LEDAMARIABRAGA and LEDA BRAGA in the state of Arizona.

13.     The Court has personal jurisdiction over Defendant Withheld because they contributed to and enabled Defendant Brown's registration of the Fraudulent Domain and infringement of Plaintiff Systematica's service marks LEDAMARIABRAGA and LEDA BRAGA in the state of Arizona.

14.     The Court also has personal jurisdiction over Defendants because they have purposefully availed themselves of the opportunity to conduct commercial activities in this forum. The Complaint arises out of those commercial activities.

15.     Venue is proper in this district pursuant to 15 U.S.C. § 1125(d)(2)(A), because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## BACKGROUND

16.     Plaintiff Systematica is a global hedge fund investment firm founded in 2015. Plaintiff's global footprint includes offices in Jersey, London, New York, Singapore, and Shanghai.

17.     Plaintiff Systematica manages approximately $17 billion in assets and is a leader in using creative technology solutions for its clients.

18.     Plaintiff Systematica was founded by Plaintiff Leda Maria Braga and Ms. Braga continues to act as its Chief Executive Officer. Ms. Braga has worked in finance for over two decades, holding positions at J.P. Morgan, Cygnifi, and BlueCrest Capital.

19.     Ms. Braga served on the advisory board of the pension fund for CERN in Geneva and on the advisory board of the London School of Economics' Systemic Risk Centra. Ms. Braga currently serves on the board of trustees for the Standards Board of Alternative Investments and on the New York Fed's Investment Advisory Committee on Financial Markets.

20.     Ms. Braga is a well-known and well-respected leader in the financial services industry, having been described as the "most powerful woman in hedge funds" in an article published by CNBC.

21.     Plaintiff Systematica, with Ms. Braga's consent and permission, is the lawful owner of U.S. trademark applications for the service marks LEDA BRAGA and LEDA MARIA BRAGA for "financial services, namely, management and brokerage in the fields of stocks, bonds, options, commodities, futures and other securities; investment services, namely, the investment of funds of others, investment advice, investment management, investment consultation and investment of funds for others, including private and public equity and debt investment services; asset management services, namely, management of a capital investment fund; information, data, advice

and consultancy services relating to the aforesaid" in Class 36 (together, the "BRAGA Marks"). Copies of the applications submitted to the U.S. Patent and Trademark Office are attached hereto as Exhibit B.

22.    The BRAGA Marks are in use in commerce in the United States and Plaintiff Systematica is the owner of the associated common law trademark rights.

23.    Plaintiff Braga is the lawful owner of her name, image and likeness.

24.    Plaintiff Braga is an integral part of Plaintiff Systematica's business and reputation, and her name has acquired distinctiveness in the financial services industry.

## THE FRAUDULENT WEBSITE

1.    Defendant Namecheap is accredited as a domain name registrar by the Internet Corporation of Assigned Names and Numbers ("ICANN").

2.    Defendant Withheld provides a privacy service to Namecheap's customers.

3.    Cybercriminals often rely on privacy services to hide their ownership and control of malicious domains from the public. Privacy services conceal the domain registrant's identity on publicly available domain registration records.

4.    On or around October 5, 2024, Plaintiffs became aware of the Fraudulent Website hosted at <ledamariabraga.com>. Screenshots from the Fraudulent Website are attached hereto as Exhibit C.

5.    The Fraudulent Website purports to be a marketing page for Ms. Braga that contains a biography of her career and investment history.

6.    The Fraudulent Website contains copyrighted content, including photographs of Ms. Braga, that Defendant Brown does not have permission to use or distribute, and prominently

displays Plaintiffs' LEDA MARIA BRAGA and LEDA BRAGA service marks and Ms. Braga's name, image and likeness.

7.    Defendant Brown does not have Ms. Braga's permission or consent to use her name, image or likeness.

8.    The Fraudulent Website provides users with so-called "useful links," including a link to contact an "Investment Advisor" that opens an email addressed to advisor@ledamariabraga.com. Any individual visiting the Fraudulent Website would be likely to think that this email address would put them directly in contact with Ms. Braga or her team.

9.    There is a material and significant risk that the Fraudulent Website is or will be used to perpetrate a financial fraud, investment scheme, and/or phishing scheme. Websites like the Fraudulent Website are frequently created by fraudsters to provide an apparently "legitimate" back story for a financial scam. For example, a fraudster might telephone a member of the public and purport to offer Ms. Braga's financial services. If the target asks for evidence of the fraudster's legitimacy, they would be referred to the Fraudulent Website and invited to initiate contact via the email address published there. The fraudster would receive the email and thereby establish trust with the target.

10.    Operation of the Fraudulent Website is all the more concerning given the highly regulated nature of the financial sector that Plaintiff Systematica operates within. The purported offer of financial advisory services by Defendant Brown under Plaintiff Braga's name is likely in breach of regulatory rules related to financial services and securities in many jurisdictions, including the United States. For example, FINRA has regulations related to communications with potential clients, broker qualification and licensing, and registration with FINRA.

11.     In fact, Systematica is so concerned about fraudulent activity that they have added a warning banner to the top of their own website alerting customers to the existence of fraudulent websites. See screenshot from https://www.systematica.com/ attached hereto as Exhibit D.

12.     On or around October 7, 2024, Plaintiffs submitted a Request for Nonpublic Registration Data to ICANN to ascertain the identity of Defendant Brown, the registrant of the Fraudulent Domain. Plaintiffs have received no response to date. A copy of the Request is attached hereto as Exhibit E.

13.     On or around October 10, 2024, Plaintiffs sent a letter to Defendant Namecheap informing them of the Fraudulent Website, the intellectual property infringement perpetrated by Defendant Brown, and requesting that they take down and disable the Fraudulent Website. Plaintiffs have received no response to date. A copy of this letter is attached hereto as Exhibit F.

14.     On or around November 20, 2024, Plaintiffs submitted to Defendant Namecheap (i) a Digital Millennium Copyright Act ("DMCA") Notice and Takedown Request, and (ii) a Fraud and Abuse Report. Copies of these submissions are attached hereto as Exhibit G.

15.     On or around November 25, 2024, Plaintiffs submitted a revised Fraud and Abuse Report to Defendant Namecheap after speaking with a Namecheap Live Agent through Namecheap's "Live Chat" function. A copy of the revised Fraud and Abuse Report is attached hereto as Exhibit H.

16.     On or around November 27, 2024, Plaintiffs were informed by one of Defendant Namecheap's Live Chat agents that the DMCA Notice and Takedown Request filed on November 20, 2024 was not compliant with DMCA requirements. Plaintiffs reviewed the submission and have determined that it is, in fact, compliant with DMCA requirements. Defendant Namecheap

has not responded to further requests to specifically identify the non-compliant elements. Copies of the correspondence are attached hereto as Exhibit I.

17.     On or around December 20, 2024, Plaintiffs filed a complaint under the Uniform Domain Name Dispute Resolution Policy ("UDRP") to the World Intellectual Property Organization Arbitration and Mediation Center to seek the transfer of the Fraudulent Domain to Plaintiffs. A copy of the complaint as filed is attached hereto as Exhibit J.

18.     Defendant Brown's registration of the Fraudulent Domain and operation of the Fraudulent Website are a direct violation of Defendant Namecheap's Registration Agreement (the "Registration Agreement"), which prohibits registrants from "infring[ing] any copyright, trademark, patent, trade secret, or other proprietary rights of any third-party." The Registration Agreement further prohibits registrants from using the domain "for the purposes of impersonating another person or entity." A copy of the Registration Agreement is attached hereto as Exhibit K.

19.     Despite notice, Defendant Namecheap has repeatedly failed to take ". . . steps to investigate and respond appropriately to any reports of abuse" as required by the ICANN Registrar Accreditation Agreement ("RAA"). A copy of the RAA is attached hereto as Exhibit L.

20.     Defendant Withheld has failed to disclose the identity and current contact information of registrant John Brown.

**COUNT I**
**Federal Trademark Infringement under 15 U.S.C. § 1125(a)**
**(against Defendant Brown)**

21.     Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs as though fully set forth herein.

22.     The actions of Defendant Brown described above and specifically, without limitation, their unauthorized use of the LEDA MARIA BRAGA and LEDA BRAGA marks, and confusingly similar variations thereof, in commerce to advertise, promote, market, and sell

8

financial services, or perpetrate a phishing scheme, throughout the United States including Arizona, constitute trademark infringement in violation of 15 U.S.C. § 1125(a).

23.    Plaintiffs have invested substantial time, effort and financial resources promoting the BRAGA Marks in connection with the marketing and sale of financial services in interstate commerce.

24.    As a result, the BRAGA Marks, through widespread and favorable acceptance and recognition, have become assets of substantial value as a symbol of Plaintiffs' skill in providing financial management services and have garnered significant goodwill.

25.    Notwithstanding Plaintiffs' established rights in the BRAGA Marks, Defendant Brown registered the Fraudulent Domain without Plaintiff's approval or consent.

26.    Defendant Brown has engaged in these infringing activities despite having actual knowledge of Plaintiffs' use and ownership of the BRAGA Marks and Defendant Brown's lack of authorization to use the BRAGA Marks.

27.    Defendant Brown's actions are likely to lead the public to conclude, incorrectly, that the Fraudulent Website is a legitimate avenue to request financial services from Ms. Braga and that the Fraudulent Website was approved or authorized by Plaintiffs, which false belief has damaged and will continue to damage Plaintiffs.

28.    Defendant Brown's unauthorized use of the BRAGA Marks in interstate commerce as described above, constitutes trademark infringement under 15 U.S.C. § 1125.

29.    Defendant Brown's infringement was willful.

30.    As a direct and proximate result of Defendant Brown's trademark infringement, Plaintiffs have suffered and will continue to suffer loss of income, profits and goodwill and Defendant Brown has and will continue to unfairly acquire income, profits and goodwill.

31.     Defendant Brown's acts of infringement will cause further irreparable injury to Plaintiffs if Defendant Brown is not restrained by this Court from further violation of Plaintiffs' rights.

32.     Plaintiffs have no adequate remedy at law.

### COUNT II
### False Designation of Origin and False Endorsement under 15 U.S.C. § 1125(a)
### (against Defendant Brown)

33.     Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs as though fully set forth herein.

34.     Defendant Brown is falsely using the BRAGA Marks in commercial advertising to misrepresent that the financial services provided by Defendant Brown, if any, are connected to, associated with, approved by, sponsored by, or endorsed by Plaintiffs when, in fact, they are not.

35.     The Fraudulent Website purports to offer financial and investment advice from an "Investment Advisor." Reasonable consumers would believe that Ms. Braga or a representative authorized by her is the investment advisor offering such advice from a website utilizing her name and likeness.

36.     Defendant Brown's unauthorized and infringing use in commerce of the BRAGA Marks as alleged herein constitutes a false endorsement and a false or misleading representation of fact.

37.     On information and belief, Defendant Brown's conduct has been and is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiffs.

38.     Defendant Brown's conduct therefore constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

39.    Defendant Brown's conduct is causing and has caused immediate and irreparable harm to Plaintiffs and will continue to both damage Plaintiffs and confuse the public unless enjoined by this Court.

40.    Plaintiffs have no adequate remedy at law.

**COUNT III**
**Common Law Right of Publicity**
**(against Defendant Brown)**

41.    Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs as though fully set forth herein.

42.    Defendant Brown has advertised and promoted the provision of financial management services by Plaintiff Braga using the name, likeness, photographs and voice of Plaintiff Braga on the Fraudulent Website.

43.    Plaintiff Braga has not consented to the foregoing uses of her name, likeness, photographs or voice.

44.    The foregoing conduct constitutes a violation of Plaintiff Braga's common law right of publicity.

45.    As a direct and proximate result of the foregoing acts of Defendant Brown, Plaintiff Braga has been damaged in an amount according to proof.

46.    On information and belief, Defendant Brown has engaged in the above-described conduct with oppression, fraud, and malice and, accordingly, that punitive damages should be awarded against Defendant Brown in an amount according to proof.

47.    Plaintiff has no adequate remedy at law.

**COUNT IV**
**In Personam Violation of Cyberpiracy Protection for Individuals Act ("CPI")**
**15 U.S.C. § 8131**
**(against all Defendants)**

48.     Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs as though fully set forth herein.

49.     The Fraudulent Domain consists of the exact name of another living person, specifically that of Plaintiff Systematica's founder and Chief Executive Officer Leda Maria Braga, and Plaintiff Braga uses this name both as her personal name and as a source of business identity.

50.     On information and belief, Defendant Brown registered the Fraudulent Domain and published the Fraudulent Website with the specific intent to profit from Plaintiff Braga's reputation and to divert investors, consumers, customers and/or business contacts to the Fraudulent Website.

51.     Defendant Namecheap has received numerous requests from Plaintiffs to takedown the Fraudulent Website and has denied each such request.

52.     Defendant Withheld continues to shield the identify of Defendant Brown such that Plaintiffs have been  forced to take additional actions to identify and enjoin Defendant Brown from operation of the Fraudulent Website, including filing a UDRP complaint and this civil action.

53.     On information and belief, no Defendant has the legal name "Leda Maria Braga" or "Leda Braga," nor is such name commonly used to identify any of the Defendants.

54.     On information and belief, no Defendant has any trademark or any other intellectual property rights in the Fraudulent Domain or the Fraudulent Website.

55.     The conduct of Defendants has caused Plaintiffs to lose control over the reputation and goodwill associated with Plaintiffs' business and Ms. Braga's personal name.

56.     The Defendants' violation of the CPI is intentional and willful.

57.    The Defendants have no good faith defense to this action within the meaning of the CPI.

58.    Plaintiffs have been substantially harmed as a direct result of the Defendants' conduct.

59.    Unless the Defendants are enjoined from further use and misuse of the Fraudulent Website name and the transfer of the Fraudulent Domain to Plaintiffs is ordered by this Court, Plaintiffs will continue to suffer irreparable harm because the damages sustained will be immeasurable, unpredictable, and unending. Moreover, the CPI specifically provides for injunctive relief at 15 U.S.C. § 8131(2).

60.    Plaintiffs have no adequate remedy at law.

**COUNT V**
**In Personam and In Rem Violation of Anticybersquatting Protection Act ("ACPA")**
**15 U.S.C. § 1125(d)**
**(against all Defendants)**

61.    Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs as though fully set forth herein.

62.    The name of Plaintiff Braga is protected as a trademark under the ACPA and the Lanham Act because Ms. Braga is a founder and executive in the financial services and hedge fund industries, who relies on her name and reputation in commerce to promote her business, including that of Plaintiff Systematica.

63.    On information and belief, through the use of Plaintiff Braga's name in securing the Fraudulent Domain and publishing the content of the Fraudulent Website, Defendants had a bad faith intent to profit from the use of the BRAGA Marks.

64.     On information and belief, Defendant Brown has not used the Fraudulent Website in connection with the bona fide offering of any goods or services, nor for any other good faith purpose.

65.     The Defendants have no trademark, nor any other intellectual property rights in the Fraudulent Domain or the Fraudulent Website.

66.     Defendants' conduct has caused substantial harm to Plaintiffs' reputation and good will.

67.     As a result of Defendants' conduct, Plaintiffs have been substantially harmed.

68.     Plaintiffs have no adequate remedy at law.

## Count VI
### Contributory Trademark Infringement
### (against Defendants Namecheap and Withheld)

69.     Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs as though fully set forth herein.

70.     Notwithstanding Plaintiffs' established rights in the BRAGA Marks, Defendant Namecheap has refused to take down or disable the Fraudulent Website despite its knowledge that its registration is unauthorized and fraudulent.

71.     Notwithstanding Plaintiffs' established rights in the BRAGA Marks, Defendant Withheld has refused to disclose the name or current contact information of Defendant Brown.

72.     The actions of Defendants described above and specifically, without limitation, their knowledge, participation, and inducement of the unauthorized use of the BRAGA Marks, and confusingly similar variations thereof, in commerce to advertise and market financial and investment services as part of a likely financial fraud, investment scheme, and/or phishing scheme

throughout the United States, constitute contributory trademark infringement in violation of federal law and the common law.

73. The actions of Defendants Namecheap and Withheld, if not enjoined, will continue. Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial consisting of, among other things, diminution in the value of and goodwill associated with the BRAGA Marks, and injury to Plaintiffs' business.

74. On information and belief, the actions of Defendants described above were and continue to be deliberate and willful.

75. Plaintiffs have no adequate remedy at law.

**Count VII**
**Contributory False Designation of Origin and False Endorsement**
**under 15 U.S.C. § 1125(a)**
**(against Defendants Namecheap and Withheld)**

76. Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs as though fully set forth herein.

77. Notwithstanding Plaintiffs' established rights in the BRAGA Marks, Defendant Namecheap has refused to take down or disable the Fraudulent Website despite its knowledge that its registration is unauthorized and fraudulent.

78. Notwithstanding Plaintiffs' established rights in the BRAGA Marks, Defendant Withheld has refused to disclose the name or current contact information of Defendant Brown.

79. The actions of Defendants described above and specifically, without limitation, their knowledge, participation, and inducement of the unauthorized use of the BRAGA Marks to imply that Plaintiff Braga is providing or is otherwise associated with the services offered through the Fraudulent Website constitute contributory false endorsement and a false or misleading representation of fact in violation of federal law and the common law.

80.     The actions of Defendants Namecheap and Withheld, if not enjoined, will continue. Plaintiffs have suffered and continue to suffer damages in an amount to be proven at trial consisting of, among other things, confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiff.

81.     On information and belief, the actions of Defendants described above were and continue to be deliberate and willful.

82.     Plaintiffs have no adequate remedy at law.

## REQUEST FOR RELIEF

WHEREFORE, in consideration of the foregoing, Plaintiffs respectfully request that this Court enter an Order granting the following relief:

a)      That Plaintiffs be granted injunctive relief under 15 U.S.C. § 1051 et seq.; 15 U.S.C. § 8131, and federal law and Arizona common law of contributory trademark infringement and vicarious trademark infringement and contributory false endorsement and vicarious false endorsement; specifically, that Defendants and all of their respective officers, agents, servants, representatives, employees, attorneys, and all other persons acting in concert with them be enjoined from:

(i) operating or hosting the Fraudulent Website or otherwise using the Fraudulent Domain or any other confusingly similar domain;

(ii) using the BRAGA Marks, or any mark confusingly similar to the BRAGA Marks, in connection with the marketing, promotion, advertising, sale, or distribution of any purported financial and investment services and/or in any unlawful manner;

16

(iii) directly or indirectly engaging in false advertising or promotion of Plaintiffs' services;

(vi) making or inducing others to make any false, misleading or deceptive statement of fact, or representation of fact in connection with the promotion, advertisement, packaging, display, sale, offering for sale of financial services by making false representations regarding Plaintiffs' services; and

(v) infringing Plaintiff Braga's common law right of publicity.

b)    That Defendant Brown be ordered to transfer the Fraudulent Domain to Plaintiffs pursuant to 15 U.S.C. § 8131(2) and 15 U.S.C. § 1125(d);

c)    That Defendants file, within ten (10) days from entry of an injunction, a declaration with this Court signed under penalty of perjury certifying the manner in which Defendants have complied with the terms of the injunction;

d)    That Defendants be adjudged to have violated 15 U.S.C. § 1125(a) by unfairly competing against Plaintiffs by using false, deceptive or misleading descriptions or representations of fact related to Plaintiffs;

e)    That Defendants be adjudged to have violated the Anticybersquatting Protection Act, 15 U.S.C. § 1125(d), and the Cyberpiracy Protections for Individuals Act, 15 U.S.C. § 8131;

f)    That Plaintiffs receive and recover actual damages in an amount to be determined for Defendants' infringement of the BRAGA Marks and false endorsement claims under the Lanham Act and violation of Plaintiff's right of publicity;

g)    That Plaintiffs receive and recover $100,000 in statutory damages per infringing domain name by reason of Defendants' cybersquatting, in accordance with the Anticybersquatting Protection Act, 15 U.S.C. § 1125(d);

1
2

h)      Awarding Plaintiffs their attorneys' fees and costs pursuant to 17 U.S.C. § 1203, 15 U.S.C. § 8131(2), and/or 15 U.S.C. § 1117 and other applicable statutory provisions; and

3

i)      Granting Plaintiffs such other and further relief as the Court may deem just.

4
5

Dated: December 30, 2024

6
7
8
9

/s/ Tyler G. Doyle
Tyler G. Doyle (State Bar No. 034303)
Baker & Hostetler LLP
811 Main Street, Suite 1100
Houston, TX  77002-6111
Telephone:   713.646.1374
tdoyle@bakerlaw.com

10
11
12
13

Mark H. Tidman (*pro hac vice* forthcoming)
Baker & Hostetler LLP
1050 Connecticut Avenue NW, Suite 1100
Washington, D.C.  20036-5304
Telephone:    202.861.1670
mtidman@bakerlaw.com

14
15
16
17
18

Lisa Bollinger Gehman (*pro hac vice* forthcoming)
Baker & Hostetler LLP
1735 Market Street, Suite 3300
Philadelphia, PA  19103-7501
Telephone:    215.568.3100
lgehman@bakerlaw.com

19
20

Attorneys for Plaintiffs

21
22
23
24
25
26
27
28

1

**DEMAND FOR JURY TRIAL**

2          Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by

3    jury in this action of all issues so triable.

4

5

Dated: December 30, 2024

6                                                    */s/ Tyler G. Doyle*
                                                     Tyler G. Doyle (State Bar No. 034303)
7                                                    Baker & Hostetler LLP
                                                     811 Main Street, Suite 1100
8                                                    Houston, TX  77002-6111
                                                     Telephone:   713.646.1374
9                                                    tdoyle@bakerlaw.com

10
                                                     Mark H. Tidman (*pro hac vice* forthcoming)
11                                                   Baker & Hostetler LLP
                                                     1050 Connecticut Avenue NW, Suite 1100
12                                                   Washington, D.C.  20036-5304
                                                     Telephone:     202.861.1670
13                                                   mtidman@bakerlaw.com

14
                                                     Lisa Bollinger Gehman (*pro hac vice*
15                                                   forthcoming)
                                                     Baker & Hostetler LLP
16                                                   1735 Market Street, Suite 3300
                                                     Philadelphia, PA  19103-7501
17                                                   Telephone:     215.568.3100
                                                     lgehman@bakerlaw.com
18

19                                                   Attorneys for Plaintiffs

20

21

22

23

24

25

26

27

28